TO BE PUBLISHED IN FEDERAL SUPPLEMENT 2D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 2009-219 (WOB)

SARAH JONES a/k/a
Jane Doe                                                    PLAINTIFF

VS.                      OPINION AND ORDER

DIRTY WORLD ENTERTAINMENT
RECORDINGS, LLC, d/b/a
Thedirt.com, ET AL.                                         DEFENDANTS


**BERTELSMAN, District Judge:**

This matter is before the court on the motion to dismiss for lack of personal jurisdiction by defendant Dirty World, LLC (Doc. 29) and plaintiff's motion for leave to supplement her responsive memorandum (Doc. 40).

The court held oral argument on these motions on January 5, 2011, thereafter taking the motions under submission. (Doc. 45) Having heard those arguments, and having reviewed the matter further, the court now issues the following Opinion and Order.

**FACTUAL AND PROCEDURAL BACKGROUND**

Defendant Dirty World, LLC operates, from its principal place of business in Arizona, an Internet web site known as "thedirty.com." (Second Am. Compl. ("SAC") ¶ 4) This web site

invites and publishes comments by individuals who visit the site, and defendant Hooman Karamian, a/k/a Nik Richie ("Richie"), responds to those posts and publishes his own comments on the subjects under discussion. (SAC ¶¶ 3, 14, 19; Narrative of Sarah Jones ("Narrative")[1] (Doc. 18) *passim*)

Plaintiff Sarah Jones is a citizen of Kentucky; a resident of Northern Kentucky; a teacher at Dixie Heights High School in Edgewood Kentucky; and a member of the Cincinnati BenGals, the cheerleading squad for the Cincinnati Bengals professional football team. (SAC ¶¶ 1, 12, Narrative at 1)

On October 27, 2009, a visitor to the.dirty.com posted a message stating:

> Nik, this is Sara J, Cincinnati Bengal[*sic*] Cheerleader. She's been spotted around town lately with the infamous Shayne Graham. She also has slept with every other Bengal

---

[1] Plaintiff Sarah Jones submitted a narrative she prepared in support of her motion for default judgment against another defendant, Dirty World Entertainment Recordings, LLC. At an evidentiary hearing held on August 25, 2010, plaintiff swore to the truth of the contents of this narrative, which was then made part of the record. (Doc. 17, 18) The court therefore treats the narrative as an affidavit of the plaintiff, which may properly be considered with respect to the jurisdictional issue at hand. *See Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996) ("When, however, a district court rules on a jurisdictional motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(2) without conducting an evidentiary hearing, the court must consider the pleadings *and affidavits* in a light most favorable to the plaintiff . . . .") (emphasis added). *See also* 2 James Wm. Moore, *Moore's Federal Practice* § 12.50 (3d ed. 2002) ("[T]he court may decide the question instead based on the pleadings, affidavits, and supporting materials, in which case plaintiff need make only a prima facie showing of [personal] jurisdiction.").

> Football player.  This girl is a teacher too!  You would
> think with Graham's paycheck he could attract something a
> little easier on the eyes Nik!

(Narrative at 1)  Upon learning of this post, plaintiff emailed the web site and requested that the post be removed because she was concerned it could affect her job.  (*Id.*)  After initially receiving a response stating that the web site would remove the post, plaintiff was told that the post would not be removed. (*Id.*)

On December 7, 2009, another post was made to the.dirty.com:

> Nik, here we have Sarah J, captain cheerleader of the
> playoff bound cinci bengals. .  Most ppl see Sarah has [*sic*]
> a gorgeous cheerleader AND highschool teacher. .  yes she's
> also a teacher . . but what most of you don't know is . .
> Her ex Nate . . cheated on her with over 50 girls in 4 yrs.
> . in that time he tested positive for Chlamydia Infection
> and Gonorrhea . . so im sure Sarah also has both . .  what's
> worse is he brags about doing sarah in the gym . . football
> field . . her class room at the school where she teaches at
> DIXIE Heights.

(SAC ¶¶9-13, Narrative at 2)  In response, Riche posted: "Why are all high school teachers freaks in the sack? - nik."  (SAC ¶ 14, Narrative at 2)

Again plaintiff emailed the web site requesting that the posts be removed, but her requests were ignored.  (SAC ¶ 21, Narrative at 2)  Plaintiff's sworn narrative describes the effect that these and other posts on thedirty.com had with respect to her teaching position, her membership in the Cincinnati BenGals, and her personal life.

Plaintiff filed this action on December 23, 2009, against

Dirty World, LLC, Richie, and two other entities bearing names that include the phrase "Dirty World."[2] (Doc. 1) Plaintiff filed a Second Amended Complaint on August 31, 2010, alleging claims for defamation, libel per se, false light publicity, and intentional infliction of emotional distress. (Doc. 22)

Following an evidentiary hearing, the court entered a default judgment on August 25, 2010, against defendant Dirty World Entertainment Recordings, LLC in the amount of $11 million. (Doc. 19) The above posts which form the basis of plaintiff's claims herein were apparently removed from thedirty.com after news of this default judgment appeared in the national media. (SAC ¶ 22)

**ANALYSIS**

A. **Personal Jurisdiction - General Principles**

The problem with dealing with a personal jurisdiction issue is not that there are too few precedents, but rather that there are too many. This opinion will attempt to discuss only those that are most pertinent.

The general criteria for addressing personal jurisdiction issues are set forth in the Sixth Circuit's landmark opinion in *Compuserve, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir. 1996). In this early Internet case, the court set forth the following

---

[2]The record is thus far undeveloped as to the nature of the relationship between and among these defendants.

4

principles:

1. The trend is toward upholding personal jurisdiction since today "all but the most remote forums are easily accessible for the pursuit of both business and litigation." *Id*. at 1262 (citation omitted).

2. As in other personal jurisdiction cases, however, in Internet cases the "defendant must be amenable to suit under the forum state's long-arm statute and the due process requirements of the Constitution must be met." *Id*. (citation omitted).

3. Therefore, even in Internet cases, the standard three criteria are:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

*Id*. at 1263 (quoting *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1116 (6th Cir 1994)).[3]

4. To establish personal jurisdiction, the plaintiff "need

---

[3] Where the forum state's long-arm statute has been construed to reach as far as the limits of the Due Process Clause, the inquiry is limited to the constitutionality of exercising personal jurisdiction over the defendant and is determined under this three-part test. *Aristech Chem. Int'l Ltd v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998) (citation omitted). The Kentucky long-arm statute has been so construed. *Id.* (citation omitted).

only make a prima facie case," and the court cannot weigh the defendant's factual assertions, if it does not hold an evidentiary hearing. *Id.* (citation omitted).

**B. The Case at Bar**

    **1. Application of General Principles**

The record, as developed to date, shows the following facts. Defendant Dirty World, LLC operates an Internet web site from Arizona called "thedirty.com." The public is requested to post "dirt" about individuals on the web site. Anyone from any place in the world may do so. Here, the statements quoted above were posted by anonymous persons concerning the plaintiff. Once posted, others could and did comment, and the defendants here, the operators of the site, also commented on the postings. Dirty World, LLC, through Richie, posted at least one comment, the tenor of which agreed with the allegedly libelous postings. Richie also responded to communications from the plaintiff on some occasions. (Narrative at 4)

Thus, the court concludes that defendants are operating what is termed "an interactive web site." This interactive site invited and accepted postings that were allegedly libelous per se of individuals or allegedly invaded their right of privacy. The defendants accepted and maintained such postings concerning the plaintiff. From these postings, defendants knew that plaintiff probably resided in the Cincinnati area, since the postings

6

described alleged activities of the plaintiff as a Cincinnati Bengals cheerleader.

In *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883 (6th Cir. 2002), the court adopted the analysis of a Pennsylvania district court differentiating among various types of web sites for personal jurisdiction purposes. *Id.* at 890 (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).

*Zippo* delineates "a sliding scale" of types of Internet sites, which scale is to be used in the personal jurisdiction analysis. *Zippo*, 952 F. Supp. at 1124. At one end of the scale are situations where the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files. *Id.* In this instance, the exercise of personal jurisdiction in the foreign jurisdiction is clearly proper. *Id.*

At the opposite end of the scale are sites "where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions." *Id.* This last is a "passive web site that does little more than make information available to those who are interested in it." *Id.* Such a web site does not provide a basis for exercising personal jurisdiction. *Id.* (citation omitted).

The middle ground, according to the *Zippo* analysis, "is

occupied by interactive Web sites *where a user can exchange information with the host computer.* *Id.* (emphasis added). "In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id.* (citation omitted).

"Traditionally, when an entity intentionally reaches beyond its boundaries to conduct business with foreign residents, the exercise of specific jurisdiction is proper." *Id.* (citing *Burger King Corp. v. Rudzawicz*, 471 U.S. 462, 475 (1985)).

The facts alleged here indicate that Dirty World, LLC, through thedirty.com, intentionally reaches beyond the boundaries of its home state to conduct business and interact with residents of other states. It is a fair assumption that the defendants are not in this business as a hobby, but rather to make money, as do most web sites, by advertising. The defendants publish invidious and salacious posts by visitors to the web site (known on the site as "THE DIRTY ARMY") (Narrative *passim*), they respond to those posts with their own comments, and they thereby encourage and generate further posts by readers. In effect, a dialogue is created. It is also a fair inference that the salacious posts will invite hits from residents of the region where the subject of the posts lives and/or works. Thus, defendants occupy the *Neogen-Zippo* middle ground.

Therefore, the court holds that the record sufficiently shows that Dirty World, LLC purposefully availed itself of the privilege of causing a tortious consequence in Kentucky by virtue of its web site activities.

Dirty World, LLC objects that there is no evidence that it intended to cause any consequence in Kentucky because it knew only that plaintiff was a member of the cheerleading squad for the professional football team located in Cincinnati, Ohio. The court finds this argument to be disingenuous.

Defendant conceded at oral argument that specific personal jurisdiction could be exercised in Ohio, because defendants had to know that a Cincinnati Bengals cheerleader would of necessity work in Ohio and perhaps might live there.

As it turns out, plaintiff lives in Kentucky, across the Ohio River from Cincinnati and about four miles from the Bengals' home stadium.

The Northern Kentucky region, where this court sits, lies across the one-half-mile wide Ohio River from Cincinnati. Greater Cincinnati/Northern Kentucky, although spanning two states, forms one economic and social region.[4] The Greater

---

[4]Indeed, the relevant "Greater Cincinnati" metropolitan statistical area as defined by the United States Census Bureau, includes parts of Ohio, Kentucky, and Indiana, including the counties where both this federal court and the federal court in Cincinnati are located.
*See* www.bls.gov/oes/current/msa_def.htm#17140.

9

Cincinnati/Northern Kentucky International Airport is located in Northern Kentucky, not far from plaintiff's residence. There is a common major newspaper for the area, and Northern Kentucky residents' television primarily comes from Cincinnati stations. It is extremely common for Northern Kentucky residents to go back and forth daily to Ohio to work, eat, visit, shop or seek entertainment, and the same may be said for residents of Cincinnati with respect to Northern Kentucky.

It is important to remember that we are presented here, not with a question of subject matter jurisdiction, where state borders might have more significance, but with an issue of personal jurisdiction, where the primary inquiry is whether the defendant will be deprived of due process by being required to litigate in a distant forum. *See Aristech*, 138 F.3d at 628-29.

There is no difference in the due process the defendants would receive in the federal courts in Cincinnati, Ohio or Covington, Kentucky. There would be no greater litigation burden in defending against plaintiff's claims in this court than one and one-half miles away in the Southern District of Ohio. In fact, the Kentucky courthouse is closer than is the Cincinnati courthouse to the metropolitan airport which the defendants' representatives, traveling from Arizona and possibly elsewhere, would likely use to attend court.

In *Keeton v. Hustler*, 465 U.S. 770 (1984), the plaintiff

resided in New York, but the Supreme Court held she could sue the defendant publisher in New Hampshire where magazines containing allegedly libelous articles were sold. *Id.* 774-75. The Supreme Court found no due process problems with allowing jurisdiction in the neighboring state.

This court agrees with the perceptive discussion of the internet and personal jurisdiction in *Facebook, Inc. v. Connectu LLC,* No. C 07-01389 RS, 2007 WL 2326090 (N.D. Cal. Aug. 13, 2007), in which it is pointed out that, in the age of the Internet, "specific, targeted conduct may be 'expressly aimed' at a particular individual or entity, despite the fact that the person engaging in the conduct may not know of the *geographic* location of the individual or entity." *Id.* at *5 (emphasis in original).

The court's discussion fits the case at bar exactly:

> Here, there is no dispute that [defendants] were fully aware that [plaintiff] existed, and that they specifically targeted their conduct against [plaintiff]. That they were able to do so while remaining ignorant of [plaintiff's] precise location may render this case factually distinct from prior precedents finding jurisdiction for acts of express aiming, but not in a manner that warrants a different result.

*Id.* at *6[5]

---

[5]In products cases, it has been held that, where defendant directs marketing efforts to a region, personal jurisdiction may be exercised in any state within that region. *See, e.g, Clune v. Alimak AB,* 233 F.3d 538, 543-44 (8th Cir. 2000); *Giottis v. Appollo of the Ozarks,* 800 F.2d 660, 668 (7th Cir. 1986); *Quality Air Services v. Milwaukee Valve Co.,* 567 F. Supp.2d 96, 100-01

11

In sum, it is reasonably foreseeable that plaintiff, while serving as a member of the Cincinnati BenGals cheerleading squad, would reside in the Greater Cincinnati area, which includes Northern Kentucky. Given the Internet context in which this case arises, it is thus consistent with constitutional due process for Dirty World, LLC -- which intentionally targeted plaintiff with postings which are libelous per se -- to be "haled into court" in Kentucky. *See Burger King*, 471 U.S. at 474-75.

### 2. The "Effects Test"

In addition to personal jurisdiction over Dirty World, LLC being proper under the principles discussed above, the exercise of personal jurisdiction is also independently justified by application of the "effects test." This is a special mode of analysis for personal jurisdiction issues where defamation and other intentional torts are concerned.

The test originated with companion cases decided by the Supreme Court of the United States in 1984: *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770 (1984), and *Calder v. Jones,* 465 U.S. 783 (1984).

Both of these cases were libel cases. In *Keeton,* a New York resident brought the libel action against a magazine in a state where the magazine had no place of business and the plaintiff did not reside. 465 U.S. at 772-73. Plaintiff did reside in a

---

(D.D.C. 2008).

neighboring state and the same region, but this was not crucial to the Court's decision upholding personal jurisdiction.

Rather, the Court applied the "single publication rule" which enables a defamed person to recover in the forum state "her damages from 'publications' of the alleged libel throughout the United States." *Id*. at 774. The application of the rule, the Court held, "depends to some extent on whether respondent's activities relating to [the forum state] are such as to give that State a legitimate interest in holding respondent answerable on a claim related to those activities." *Id*. at 776.

The Court further observed that "[a] state has an especial interest in exercising judicial jurisdiction over those who commit torts within its territory." *Id*. (citations omitted).

With these considerations in mind, the Court enunciated its holding as follows:

> This interest extends to libel actions brought by nonresidents. False statements of fact harm both the subject of the falsehood *and* the readers of the statement. New Hampshire may rightly employ its libel laws to discourage the deception of its citizens. There is "no constitutional value in false statements of fact." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340, 94 S. Ct. 2997, 3007, 41 L. Ed.2d 789 (1974).
>
> New Hampshire may also extend its concern to the injury that in-state libel causes within New Hampshire to a nonresident. <u>The tort of libel is generally held to occur wherever the offending material is circulated</u>. Restatement (Second) of Torts § 577A, Comment *a* (1977). The reputation of the libel victim may suffer harm even in a State in which he has hitherto been anonymous. The communications of the libel may create a negative reputation among the residents of a jurisdiction where the plaintiff's previous reputation

13

was, however small, at least unblemished.

*Id.* at 777-8 (italics in original; underlining added) (footnote omitted).

A fortiori, this analysis would apply to a libel action, such as this case, brought by a citizen of the forum state.

Of a like tenor is *Calder v. Jones*. There, the actress, Shirley Jones, a resident of California, sued in that state on the basis of an allegedly libelous article written and edited for a national magazine by defendants in Florida. 465 U.S. at 784.

The Court held that personal jurisdiction was proper. It observed:

> The article was drawn from California sources, and the brunt of the harm, in terms both of respondents's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and the harm suffered. Jurisdiction over petitioner is therefore proper in California *based on the 'effects' of their Florida conduct in California."*

465 U.S. at 788-9 (citations omitted) (emphasis added).

This language describes the situation here. Under plaintiff's allegations, defendants knew that the invidious statements they posted would cause distress and harm to the plaintiff where she lived and/or worked. The Second Amended Complaint alleges that the defendants defamed the plaintiff, invaded her right of privacy and intentionally inflicted emotional distress on her. (Doc. 22)

As stated by the *Calder* Court, the defendants there knew

14

their article "would have a potentially devastating impact upon [the plaintiff]. *And they knew that the brunt of that injury would be felt by [the plaintiff] in the State in which she lives and works. . . . An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California."* 465 U.S. at 789-90 (citations omitted)(emphasis added).

The Court also rejected the argument, similar to that advanced by Dirty World, LLC here, that it should look at the merits of the allegations of the complaint in deciding the personal jurisdictional issue. *Id.* at 790.

Although the decisions are almost thirty years old, the salutary teachings of *Keeton* and *Calder* have not been substantially modified. Thus, in *Air Products and Controls, Inc. v. Safetech Int'l, Inc.,* 503 F.3d 544, 553 (6th Cir 2007), the court held that personal jurisdiction was properly exercised over an out-of-state debtor, who engaged in fraudulent conveyances in its home state to avoid debts sued upon in the forum state. *Accord Koch v. Local 438, United Autoworkers Union*, 54 Fed App'x 807, 811-12 (6th Cir. 2002)(plaintiff's ex-employer in another state sent a libelous letter to a prospective employer in the forum state); *Neal v. Janssen,* 270 F.3d 328, 332-33 (6th Cir. 2001) (defendant sent fraudulent representations concerning sale

of horse into forum state).[6]

For all the above reasons, the court concludes that exercising personal jurisdiction over Dirty World, LLC for the claims alleged by plaintiff comports with constitutional due process.

**C.  The Communications Decency Act**

Dirty World, LLC relies on the Communications Decency Act (CDA) of 1996, 47 U.S.C. § 230(c), for the proposition that postings on its web site are privileged.

As stated above, the court cannot consider a possible defense under this Act on the personal jurisdiction issue. Therefore, this branch of defendant's motion to dismiss will be treated as a motion for summary judgment. The motion is not supported by any affidavits or other materials suitable for summary judgment motions. Plaintiff has orally moved for a period of discovery to respond to the motion. In the opinion of the court, this motion is well-taken and will be granted.

The immunity afforded by the CDA is not absolute and may be forfeited if the site owner invites the posting of illegal

---

[6]Defendants rely heavily on two Sixth Circuit cases. *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110 (6th Cir. 1994), is not in point because the publications there were in a foreign country and concerned plaintiff's activities in that country; the connection to his residence in Ohio was minimal. The same is true of *Cadle Co. v. Schlictmann,* 123 Fed. App'x 675, 679-80 (6th Cir. 2005), in which the allegedly defamatory statements concerned plaintiff's activities in a distant state that was not his residence.

materials or makes actionable postings itself. *See Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008)(en banc).

Defendant's counsel properly admitted at oral argument that discovery was necessary to resolve this motion.

Therefore, for the reasons stated herein, the court being advised,

**IT IS ORDERED AS FOLLOWS**:

1. Defendant's motion to dismiss (Doc. 29) be, and it is, hereby **DENIED**;

2. Plaintiff's motion to supplement (Doc. 40) be, and is hereby, **DENIED**, for the reasons stated on the record during oral argument;

3. Discovery may commence immediately;

4. Discovery shall be completed within **six (6) months** from the date of this Opinion and Order; and

5. Motions for summary judgment shall be filed **within thirty (30) days of the close of discovery.**

This 21st day of January, 2011.



**Signed By:**
*William O. Bertelsman*  WOB
**United States District Judge**