TO BE PUBLISHED IN FEDERAL SUPPLEMENT 2D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 09-219-WOB

SARAH JONES                                                                 PLAINTIFF

VS.                               **OPINION AND ORDER**

DIRTY WORLD ENTERTAINMENT
RECORDINGS, LLC, ET AL.                                          DEFENDANTS


**BERTELSMAN, Senior District Judge**:

This case raises important issues concerning the interpretation of the Communications Decency Act (CDA), 47 U.S.C § 240.  The case is before the Court on defendants' motion for judgment as a matter of law.  (Doc. 64).  The Court heard oral argument on that motion on December 9, 2011.  The Court now issues the following Opinion and Order.

This is a defamation and invasion-of-privacy action[1] against the defendants Hooman Karamian a/k/a Nik Richie or Nik Lamas-Richie, the operator of a web site named "the dirty.com" and the corporations through which he operates it: Dirty World, LLC and Dirty World Entertainment, LLC.

---

[1] Also included is a claim for intentional infliction of emotional distress.

The defendants admit that facially defamatory and privacy-violating posts were made to their web site concerning the plaintiff Sarah Jones.

In a prior opinion[2] ruling that this Court could properly exercise personal jurisdiction over these defendants, the Court summarized the essential facts as follows.

Defendant Dirty World, LLC operates, from its principal place of business in Arizona, an Internet web site known as "the dirty.com." (Second Am. Compl. ("SAC") ¶ 4). This web site invites and publishes comments by individuals who visit the site, and defendant Hooman Karamian, a/k/a Nik Richie ("Richie"), responds to those posts and publishes his own comments on the subjects under discussion. (SAC ¶¶ 3, 14, 19).

Plaintiff Sarah Jones is a citizen of Kentucky; a resident of Northern Kentucky; a teacher at Dixie Heights High School in Edgewood Kentucky; and a member of the Cincinnati BenGals, the cheerleading squad for the Cincinnati Bengals professional football team. (SAC ¶¶ 1, 12).

On October 27, 2009, a visitor to "the dirty.com" posted a message stating:

> Nik, this is Sara J, Cincinnati Bengal[sic] Cheerleader. She's been spotted around town lately with the infamous Shayne Graham. She also has slept with every other Bengal Football player. This girl is a teacher too! You would think with Graham's paycheck he could attract something a little easier on the eyes Nik!

---

[2] *Jones v. Dirty World Entm't Recordings, LLC*, 766 F. Supp. 2d 828 (E.D. Ky. 2011).

Upon learning of this post, plaintiff emailed the web site and requested that the post be removed because she was concerned it could affect her job. After initially receiving a response stating that the web site would remove the post, plaintiff was told that the post would not be removed.

On December 7, 2009, another post was made to "the dirty.com:"

> Nik, here we have Sarah J, captain cheerleader of the playoff bound cinci bengals.. Most ppl see Sarah has [sic] a gorgeous cheerleader AND highschool teacher. . yes she's also a teacher . . but what most of you don't know is . . Her ex Nate . . cheated on her with over 50 girls in 4 yrs. . in that time he tested positive for Chlamydia Infection and Gonorrhea . . so im sure Sarah also has both . . what's worse is he brags about doing sarah in the gym . . football field . . her class room at the school where she teaches at DIXIE Heights.

(SAC ¶¶9-13). In response, Richie posted: "Why are all high school teachers freaks in the sack? – nik." (SAC ¶ 14).

Again plaintiff emailed the web site requesting that the posts be removed, but her requests were ignored. (SAC ¶ 21). Plaintiff's sworn narrative describes the effect that these and other posts on "the dirty.com" had with respect to her teaching position, her membership in the Cincinnati BenGals, and her personal life. (Doc. 18).

Additional facts are stated in the analysis, *infra.*

## I.   ANALYSIS

1. *The Communications Decency Act (CDA)*

The defendants claim absolute immunity under this Act.

In *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC,* 521 F.3d 1157 (9th Cir. 2008) (en banc), the United States Court of Appeals for the Ninth Circuit, sitting en banc, summarized the applicable provision of the CDA as follows:

> Section 230 of the CDA immunizes providers of interactive computer services against liability arising from content created by third parties: "No provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c). This grant of immunity applies only if the interactive computer service provider is not also an "information content provider," which is defined as someone who is "*responsible, in whole or in part, for the creation or development* of" the offending content. *Id.* at § 230(f)(3).

*Roommates.com*, 521 F.3d at 1162 (emphasis added) (footnotes omitted).

The defendants here claim that they are entitled to absolute immunity under the CDA because they are not "an information content provider." They contend their site merely posts comments by the public and that they are not "responsible in whole or in part, for the creation or development of the offending content."

The Sixth Circuit has not had occasion to decide what actions by a web site operator will constitute "creation or development of the offending content" of a site. However, the Ninth and Tenth Circuits have done so in cases which this Court finds persuasive in this matter.

In *Roommates.com,* the en banc court held that the defendant there was not entitled to immunity under the CDA because the defendant required subscribers to the site as prospective landlords or tenants to include information that was illegal under the Fair Housing Act. *Id.* at 1165. For example, those posting to the site had to fill out a questionnaire indicating racial, gender, family-status and sexual-orientation preferences for the apartments they wished to rent or rent out.

The court held that by imposing this requirement, "Roommate [*sic*] becomes much more than a passive transmitter of information provided by others; it becomes the developer, at least in part, of that information. And Section 230 provides immunity only if the interactive computer service does not 'creat[e] or develop[]' the information 'in whole or in part.' *See* 47 U.S.C. § 230(f)(3)." *Id.* at 1166.

Also in point is *Federal Trade Comm'n v. Accusearch, Inc.,* 570 F.3d 1187 (10th Cir. 2009). This case involved the operator of a web site that sold various personal data, including telephone records. In doing so, it violated certain federal confidentiality regulations. *Id.* at 1190.

After discussing the background of the CDA and the reasons for its passage, the court stated its approval of the rationale of *Roommates.com.* The court held that the defendant before it could not claim immunity under the CDA, enunciating the controlling test for determining immunity as follows:

>We therefore conclude that a service provider is "responsible" for the development of offensive content only if it in some way specifically encourages the development of *what is offensive about the content.*

*Id.* at 1199 (emphasis added).

This Court agrees that this is the correct rationale for the interpretation of immunity provisions of the CDA.

### 2. *Application to the Instant Case*

#### a. Offensive content

The principal content of "the dirty.com" web site is not only offensive but tortious. At common law it was libelous per se, *i.e.*, without proof of malice or actual damages, to: 1) accuse a person of commission of crime; 2) impute unchastity to a woman; 3) state that a person had a loathsome disease; or 4) make any statement that would damage a person in his business or standing in the community. *See E. W. Scripps Co. v. Cholmondelay*, 569 S.W.2d 700, 702 (Ky. 1978).

In modern times, these categories have been modified somewhat.

As noted by Professor Leibson in his volume on Kentucky tort law:

>Defamation is a statement by the defendant which invades the reputation and good name of the plaintiff. If the statement is written, the defamation is libel. If the statement is oral, the defamation is slander.
>    The Restatement of Torts (Second) § 558 states:
>    To create liability for defamation there must be:
>    (a) a false and defamatory statement concerning another;
>    (b) an unprivileged publication to a third party;

>> (c) fault amounting at least to negligence on the part of the publisher; and
>> (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.
>
> Despite the reference to "fault," the tort, as it evolved at common law, was one of strict liability. If the statement was defamatory, it made no difference whether the defendant intended it as so, or exercised reasonable care before publishing it.

13 David J. Leibson, *Kentucky Practice* § 15:1 (2d ed. 2008).

The requirement of some degree of fault required for recovery by a private person against a media defendant under Kentucky law is negligence. *Id*. § 15:22 (citing *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 886 (Ky. 1981)(discussing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974)).

Nevertheless, "[t]he consensus rule continues to adhere to the view that it is libelous to impute sexual misconduct or immorality to either a man or a woman . . . . Thus, it was libelous to portray plaintiff as . . . involved in a `local divorce scandal'. . . , or as engaged in adultery, or as one who had a romantic encounter with a married person, . . . or as sexually promiscuous, or as possibly precipitating an 'epidemic' of sexually-transmitted diseases . . . ." [3]

Even if some of these allegations were true, since the plaintiff is a private person, the objectionable posts on "the dirty.com" may be found to have invaded her right of privacy.[4]

---

[3] David A. Elder, *Defamation: A Lawyers Guide* § 1:13 (2003)
[4] *See generally* Leibson, *supra,* § 16:4.

b.  Defendants are Developers of the Objectionable Content of Their Web Site.

This Court holds that, under the principles of *Roommates.com* and *Accusearch,* the defendants here, through the activities of defendant Richie, "specifically encourage development of what is offensive about the content" of "the dirty.com" web site.

First, the name of the site in and of itself encourages the posting only of "dirt," that is material which is potentially defamatory or an invasion of the subject's privacy.  Richie's activities as described in his deposition also require the conclusion that he "specifically develops what is offensive" about the content of the site.

Richie acts as editor of the site and selects a small percentage of submissions to be posted.   He adds a "tagline."  (Richie Depo. at 11).

He reviews the postings but does not verify their accuracy.  (*Id*. at 28).  If someone objects to a posting, he decides if it should be removed.  (*Id*. at 21).  It is undisputed that Richie refused to remove the postings about plaintiff that are alleged to be defamatory or an invasion of privacy.

Most significantly, Richie adds his own comments to many postings, including several of those concerning the plaintiff.  In these comments, he refers to

"the fans of the site" as "the Dirty Army." (*Id*. at 43-4). He also adds his own opinions as to what he thinks of postings. (*Id*. at 47).

Richie's goal in establishing the site was to bring reality TV to the Internet. (*Id*. at 50-51). He wants everybody to log on to "the dirty.com" and check it out. (*Id*. at 56). In his opinion, "you can say whatever you want on the internet." (*Id*. at 70).

One of Richie's comments posted concerning the plaintiff was "Why are all high school teachers freaks in the sack," which a jury could certainly interpret as adopting the preceding allegedly defamatory comments concerning her alleged sexual activities. When asked about this comment, he stated: "[i]t was my opinion, you know, watching the news and seeing all these teachers sleeping with their students and, you know, just my opinion on all teachers just from, like, what I see in the media." (*Id*. at 54).

Richie also posted his own comment addressed directly to the plaintiff, stating in part: "If you know the truth, then why do you care? With all the media attention this is only going to get worse for you . . . You dug your own grave here, Sarah." (*Id*. at 74).

He further posted: "I think they all need to be kicked off [the Bengals' cheerleading squad] and the Cincinnati Bengals should start over. Note to self. *Never try to battle the Dirty Army.* Nik." (*Id*. at 75) (emphasis added).

And, perhaps most significantly: *"I love how the Dirty Army has war mentality. Why go after one ugly cheerleader when you can go after all the brown baggers."* (*Id.*).

This Court holds by reason of the very name of the site, the manner in which it is managed, and the personal comments of defendant Richie, the defendants have specifically encouraged development of what is offensive about the content of the site. One could hardly be more encouraging of the posting of such content than by saying to one's fans (known not coincidentally as "the Dirty Army"): "I love how the Dirty Army has war mentality."[5]

## CONCLUSION

For the reasons stated above, this Court concludes that the defendants are not entitled to immunity under the CDA.

Therefore, the Court being advised:

**IT IS ORDERED AS FOLLOWS:**

1. That the defendants' motion for judgment as a matter of law (Doc. 64) be, and hereby is, **DENIED**;[6]

---

[5] *Accord* Ali Grace Zieglowsky, *Immoral Immunity: Using a Totality of the Circumstances Approach to Narrow the Scope of Section 230 of The Communications Decency Act*, 61 Hastings L.J. 1307 (2010); *Shiamili v. The Real Estate Group of New York, Inc.,* 952 N.E.2d 1011, 1020-21 (N.Y. App. 2011) (Lippman, C.J., dissenting).

[6] The Court reserves on defendants' argument that some of the statements at issue herein constitute non-defamatory "opinions."

    2.  That this matter be, and hereby is, set for trial by jury on **Monday, June 4, 2012 at 10:00 a.m.**;

    3.  That a final pretrial conference be held on **Friday, May 11, 2012 at 1:30 p.m.**  The parties are directed to comply with this Court's standard final pretrial order entered concurrently herewith.

    This 10th day of January, 2012.



Signed By:
*William O. Bertelsman*  *WOB*
United States District Judge