```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF KENTUCKY
                       NORTHERN DIVISION
                         AT COVINGTON
```

CIVIL ACTION NO. 09-219-WOB

SARAH JONES                                           PLAINTIFF

VS.                      <u>MEMORANDUM OPINION</u>

DIRTY WORLD
ENTERTAINMENT
RECORDINGS, LLC, ET AL.                               DEFENDANTS

## Background

At the conclusion of the presentation of evidence in the second trial of this case, the defendants made a timely motion for judgment as a matter of law under Fed. R. Civ. P. 50.

The motion was primarily based on the argument that the defendants were immune under the Communications Decency Act ("CDA"), 47 U.S.C. § 230. The Court denied the motion for the same reasons expressed in its earlier opinion addressing this issue. *See Jones v. Dirty World Entm't Recordings, LLC*, 840 F.Supp.2d 1008 (E.D. Ky. 2012).

The jury hung in the first trial of this case, which necessitated a second trial. The evidence in both trials regarding the claimed immunity was essentially the same as that described in the Court's earlier opinion. The case was submitted to the jury, which returned a verdict for the

plaintiff for $38,000.00 compensatory damages and $300,000.00 punitive damages.[1] (Doc. 207).

The Court now files this supplemental Memorandum Opinion to explain further its reasons for denying defendants' motion for judgment as a matter of law.

## Analysis

**A. The precedents support the proposition that the CDA provides only a sort of qualified immunity that can be lost by the site's intentionally developing and/or materially contributing to the illegal or objectionable material.**

Throughout these proceedings, counsel for defendants has argued that no rational court could deny CDA immunity in this case, and that defendants' claim for immunity was required by all existing precedents.

---

[1] Defendants, apparently relying solely on their immunity defense, concede the propriety of these amounts since they chose not to file a motion for a new trial under Fed. R. Civ. P. 59(a). *See Young v.* Langley, 793 F.2d 792, 794 (6th Cir. 1986) ("This court may not review the alleged excessiveness of verdicts absent a timely motion for new trial and the trial court's ruling thereon."). Failure to file such a motion also precludes appellate review of the sufficiency of the evidence. *See Gruener v. Ohio Cas. Ins. Co.*, 510 F.3d 661, 665 (6th Cir. 2008); *Pennington v. Western Atlas, Inc.*, 202 F.3d 902, 911 (6th Cir. 2000); *Young*, 793 F.2d at 794. *See generally* 12 *Moore's Federal Practice* § 59.55 (3d ed. 2013) ("Grounds for new trial that arise solely in the context of post trial proceedings must be presented to the trial court for consideration by a motion for new trial, and the failure to do so deprives the appellate court from any record that is reviewable for error.").

This contention misrepresents the law, however. This Court's ruling on the immunity issue is supported by the decisions of several United States Circuit Courts of Appeals and district court cases and, in fact, represents the weight of authority.

The principal precedent is the en banc decision of the United States Court of Appeals for the Ninth Circuit in *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008) (en banc). *See* Jones, 840 F. Supp.2d at 1000-11. There, the Ninth Circuit held that a website did not enjoy CDA immunity for posting a questionnaire and requiring answers to it which were alleged to violate federal and state housing discrimination laws, because such acts constituted the "creation or development of information" and thus made the site an "information content provider" within the scope of 47 U.S.C. § 2309(c) and (f)(3). *Roommates*, 521 F.3d at 1164-69.

Following remand and a decision on the merits of the underlying statutory housing claims, another appeal was taken. In the resulting opinion, the Ninth Circuit acknowledged *and left undisturbed* its prior CDA ruling, although it held that the website had not violated the housing statutes in question. *See Fair Housing Council of*

*San Fernando Valley v. Roommates.com, LLC*, 666 F.3d 1216 (9th Cir. 2012).[2]

Similarly, Judge Easterbrook of the Seventh Circuit, speaking for a panel of that court, emphasized that the CDA does not provide "a grant of comprehensive immunity from civil liability for content provided by a third party." *Chicago Lawyers' Comm. For Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 670 (7th Cir. 2008). While finding the website "craigslist" to be entitled to CDA immunity in that case, the Court noted that "[n]othing in the service craigslist offers induces anyone to post any particular listing or express a preference for discrimination." *Id.* at 671-72. *Cf. Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) (holding that distributors of software that enables file sharing through peer-to-peer networks can be liable for contributory copyright infringement if system is designed to enable and encourage stealing of music).

---

[2] Defendants' characterization of the Ninth's Circuit 2012 opinion in *Roommates* is thus seriously misleading. *See* Doc. 177 at 2 n. 1 (stating that because the second *Roommates* appeal was terminated in the website's favor, it "demonstrate[es] that the prior ruling denying CDA immunity to the website owner in that case was incorrect."). As noted, the Court held in defendants' favor on grounds wholly unrelated to CDA immunity and implicitly re-affirmed its prior opinion.

Similarly, the Eighth Circuit has upheld application of CDA immunity but, in doing so, observed that its ruling was based on the fact that "the record contains no evidence that [the internet service provider] designed its website to be a portal for defamatory material or [did] anything to induce defamatory postings." *Johnson v. Arden*, 614 F.3d 785, 792 (8th Cir. 2010).

The Tenth Circuit also has held that a website could not claim immunity under the CDA if it was "responsible for the development of the specific content that was the source of the alleged liability." *Fed. Trade Comm'n v. Accusearch Inc.*, 570 F.3d 1187, 1198 (10th Cir. 2009). Moreover, that Court held that one is not "responsible" for "developing" allegedly actionable information only "if one's conduct was neutral with respect to the offensiveness of the content." *Id.* at 1199.

Thus, although Courts have stated generally that CDA immunity is broad, the weight of the authority teaches that such immunity may be lost. That is, a website owner who intentionally encourages illegal or actionable third-party postings to which he adds his own comments ratifying or adopting the posts becomes a "creator" or "developer" of that content and is not entitled to immunity. *See, e.g., Hare v. Richie*, Civil Action No. ELH-11-3488, 2012 WL

5

3773116, at *19 (D. Md. Aug. 29, 2012) (noting that "the appellate case law regarding § 230(c)(1) contemplates that a website operator may be deprived of immunity if it 'designed its website to be a portal for defamatory material.'") (quoting *Johnson v. Arden*, 614 F.3d 785, 792 (8th Cir. 2010)).[3]

---

[3] *See also Hare*, 1012 WL 3773116, at *17 (noting that "Dirty World's involvement goes beyond mere editorial functions and extends to the creation of its own content – specifically, Mr. Richie's comments at the end of each post"); *S.C. v. Dirty World, LLC*, No. 11-CV-00392, 2012 WL 3335284, at *5 (W.D. Mo. Mar. 12, 2012) (distinguishing facts of case from this matter because there "[d]efendants neither adopted or encouraged further development of the post"); *Doctor's Assoc., Inc. v. QIP Holder LLC*, Civil Action No. 3:06-cv-1710 (VLB), 2010 WL 669870, at *24 (D. Conn. Feb. 19, 2010) (denying motion for summary judgment because defendants may "have gone further and actively participated in creating or developing the third-party content submitted to the [defendants'] website"); *Certain Approval Programs, L.L.C. v. Xcentric Ventures L.L.C.*, No. CV08-1608-PHX-NVW, 2009 WL 596582, at *1-3 (D. Ariz. Mar. 9, 2009) (denying motion to dismiss because plaintiffs' allegations that defendants "actively solicit defamatory content from third parties and directly encourage the use of hyperbole and exaggeration" to maximize marketability of false reports make it plausible that defendants are "information content provider" under the CDA)[3]; *MCW, Inc. v. Badbusinessbureau.com, L.L.C.*, No. Civ. A.3:02-CV-2727-G, 2004 WL 833595, at *8 (N.D. Tex. April 19, 2004) ("Section 230(c) immunity is not so broad as to extend to an interactive computer service that goes beyond the traditional publisher's role and takes an active role in creating or developing the content at issue."); *Hill v. Stubhub, Inc.*, 727 S.E.2d 550, 558 (N.C. Ct. App. 2012) (noting that CDA analysis by this Court in this matter is "similar to that deemed appropriate in *Accusearch* and *Roommates*."); *Woodhull v. Meinel*, 202 P.3d 126, 133-34 (N.M. Ct. App. 2008) (reversing grant of summary judgment

The cases cited by defendants are entirely distinguishable because none involve facts where a website contributed to the development of actionable content by adding its own comments implicitly adopting an offensive posting and encouraging similar posts. As noted above, Courts faced with such factual allegations have denied motions to dismiss and for summary judgment based on CDA immunity.[4]

**B.  The Text and Purpose of the CDA are Contrary to Defendants' Interpretation.**

Even a cursory reading of the CDA reveals that affording immunity on the facts of this case would be inconsistent with the Act's purpose.

The Act's subtitle is "Protection for blocking and screening of offensive material."  47 U.S.C. § 230.  Among the stated purposes of the statute are:

---

because defendant requested potentially defamatory material and contributed her own thoughts to the overall post).

[4] Thus, defendants' statement in their brief that CDA cases other than the one at bar "were all resolved by dispositive motion, approximately 99% in favor of the defendant" is misleading.  For example, the docket in *Certain Approval Programs, L.L.C. v. Xcentric Ventures L.L.C.*, No. CV08-1608-PHX-NVW, 2009 WL 596582 (D. Ariz. Mar. 9, 2009), reflects that the case was not resolved on dispositive motions.  Rather, after the Court denied the Rule 12(b)(6) motion to dismiss, the non-defaulting defendants settled.  (Doc. 73).  The docket also reflects that defendants' counsel was defense counsel in that case and would be aware of this fact.

>    (4) to remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material; and
>
>    (5) to ensure vigorous enforcement of Federal criminal laws to deter and punish trafficking in obscenity, stalking and harassment by means of computer.

47 U.S.C. § 230(b)(4), (5). *See Zeran v. America Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997) ("Another important purpose of § 230 was to encourage service providers to self-regulate the dissemination of offensive material over their services.").

The title of the subsection where the immunity language appears is "Protection for 'good samaritan' blocking and screening of offensive material." 47 U.S.C. § 230(c). A subsequent subsection requires a website to notify customers of available filtering devices "that may assist the customer in limiting access to material that is harmful to minors." 47 U.S.C. § 230(d). Further, subsection (e)(3) provides: "Nothing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section."

Thus, defendants' proffered interpretation of CDA immunity would distort the intent of Congress in passing this Act and allow it to be used to subvert the law of

defamation which has existed at common law for centuries, as well as the laws protecting the right of privacy which were evolved by the courts in the last century. *See Roommates*, 521 F.3d at 1164 ("The Communications Decency Act was not meant to create a lawless no-man's-land on the Internet.").[5]

In the view of this Court, the Act's text indicates that it was intended only to provide protection for site owners who allow postings by third parties without screening them and those who remove offensive content. If, however, the owners, as in the instant case, invite invidious postings, elaborate on them with comments of their own, and call upon others to respond in kind, the immunity does not apply.

**C. The Evidence in this Case Demonstrates That Richie Played a Significant Role in Adopting and Developing Actionable Content.**

The evidence elicited on discovery and in both trials showed, as the jury found by clear and convincing evidence[6], that defendants here received postings on their website

---

[5] *See* Jeffrey Blevins, *Court Decision Cautions Us to Care for the Truth*, The Enquirer, Aug. 4, 2013, at F6 ("[C]oncerns remain about commercial online services that put all of the responsibility for ethical conduct on their users, while accepting none of the blame themselves.").

[6] Although the Court held that plaintiff was not a "public figure," it instructed the jury to use the "public figure" test in an excess of caution.

which would be actionable even by a public figure, i.e., that they were knowingly false or in reckless disregard for the truth.

Further, the evidence conclusively demonstrates that these postings and others like them were invited and encouraged by the defendants by using the name "Dirty.com" for the website and inciting the viewers of the site to form a loose organization dubbed "the Dirty Army," which was urged to have "a war mentality" against anyone who dared to object to having their character assassinated.

Specifically, defendant Richie added his own comments to the defamatory posts concerning plaintiff. For example, on December 7, 2009, a third-party posted, under a large photo of plaintiff:

> Nik, here we have Sarah J, captain cheerleader of the playoff bound cinci bengals . . Most ppl see Sarah as a gorgeous cheerleader AND highschool teacher . . yes she's also a teacher . . but what most of you don't know is . . Her ex Nate . . cheated on her with over 50 girls in 4 yrs . . in that time he tested positive for Chlamydia Infection and Gonorrhea . . so im sure Sarah also has both . . whats worse is he brags about doing sarah in the gym . . football field . . her class room at the school she teaches at DIXIE Heights.

(Doc. 64-2 at 32). To this, Richie added his own tagline, in bold: "Why are all high school teachers freaks in the sack? – nik." (*Id.*). The tagline and original message appear on one page as a single story.

Thus, Richie's conduct cannot be said to have been "neutral with respect to the offensiveness of the content," such that he is not "responsible" for it within the meaning of § 47 U.S.C. § 230(f)(3). *Accusearch*, 570 F.3d at 1199.

Defendants also argue that the fact that plaintiff ultimately declined to pursue this tagline as an independently-actionable statement alters this analysis and makes these facts "identical" to those in *S.C. v. Dirty World, LLC*, No. 11-CV-00392, 2012 WL 3335284, at *5 (W.D. Mo. Mar. 12, 2012). (Doc. 177 at 16-17).

Defendants are mistaken, for the salient point about Richie's tagline is not that it was defamatory itself and thus outside CDA immunity, but rather that it effectively ratified and adopted the defamatory third-party post. The Court in *S.C.* recognized exactly this point. *Id.* at *5.

As the *S.C.* Court further noted, Richie made other comments which encouraged further defamatory posts concerning plaintiff, such as: "I love how the DIRTY ARMY has war mentality;" "Never try to battle the DIRTY ARMY;" and "You dug your own grave here Sarah." Following these comments, an additional defamatory post was made on the site on January 9, 2010, accusing plaintiff of "sle[eping] with every other Bengals Football player." (Doc. 64-2 at 30).

It is clear, therefore, that Richie did far more than just allow postings by others or engage in editorial or self-regulatory functions. Rather, he played a significant role in "developing" the offensive content such that he has no immunity under the CDA, per the precedents discussed above.

The jury properly found that this conduct justified an award of punitive damages under the stringent requirements of KRS 411.184, which requires a showing of "oppression, fraud or malice" for all punitive damage awards.

This 12th day of August, 2013.



Signed By:
William O. Bertelsman
United States District Judge